## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

       v.                      Cr. No. 05-207-01-SM

Dominick Bailey

### Government's Objection to Defendant's
### Motion for Downward Departure

The United States of America, by and through Thomas P. Colantuono, United States Attorney for the District of New Hampshire, and his assistant, Debra M. Walsh, Assistant United States Attorney, hereby request that this Honorable Court, deny Defendant's Motion for Downward Departure. In support thereof, the Government states as follows:

Facts

1.    The defendant is charged with one count of being a Felon in Possession of a Firearm, one count of being a Felon in Possession of Ammunition and one count of being in Possession of Stolen Firearms in violation of 18 U.S.C. §§ 922(g)(1) and 922(j).

2.    On October 24, 2005, counsel for the defendant moved for a hearing to determine the competency of the defendant.

3.    The defendant was evaluated at the Federal Medical Center in Lexington, Kentucky, from November 10, 2005,

through December 23, 2005.  A comprehensive report was issued on January 13, 2006, finding the defendant competent to stand trial.

4.    On February 6, 2006, a competency hearing was held. The Government presented four (4) witnesses including Dr. Betsy Campbell from the Federal Medical Center. The Court (Muirhead, J.)found that "from the beginning of the hearing defendant attempted to manipulate an 'incompetency' finding by acting."  The Court further found that although the defendant initially appeared agitated, within twenty minutes of the hearing he was at "counsel table, calm, alert and assisting counsel." Based upon the evidence, the Court found the defendant competent to stand trial.

5.    On February 8, 2006, the defendant appeared in Court for a bail hearing.  The defendant was calm and alert. He assisted his attorney and requested that he be released on bail but under house arrest.  Moreover, the defendant had a lengthy discussion with the Court concerning his medication and the necessity of eating a sandwich with his medication while in custody at the Strafford County House of Corrections.

6.   On March 29, 2006, defendant filed a Motion in Limine
     to Redetermine Competency.  On April 4, 2006, the Court
     granted defendant's motion.  On August 9, 2006, Dr.
     Shawn E. Channel of the Federal Medical Center at
     Devens, MA found the defendant competent to stand
     trial.  A competency hearing was scheduled for
     September 18, 2006.  On September 18, 2006, the
     defendant notified the Court of his intention to change
     his plea.  On September 27, 2006, the defendant entered
     a plea of guilty to all charges.

7.   From February 1997 through August 9, 2006, the
     defendant has been evaluated nine (9) times for
     competency.  He was evaluated by seven (7) different
     psychologists or psychiatrists.  He was found competent
     to stand trial six (6) times and on three (3) occasions
     (one evaluator found the defendant incompetent twice)
     found incompetent to stand trial.  However, every one
     of the eight evaluators, including the two evaluators
     who found the defendant incompetent, questioned
     malingering.

8.   In his evaluation of December 2005, by Dr. Betsy
     Campbell of the Federal Medical Center found that the
     defendant's responses to questions were deliberately

3

wrong, which appeared to be an intentional fabrication to reflect incompetency.  She testified at the competency hearing that the defendant's scores were lower than people who are mentally retarded, suggesting that the defendant must have deliberately chosen the wrong answers.  Dr. Campbell found that the defendant demonstrated "extremely manipulative behavior." She also noted that the defendant was "overheard participating in a conversation with other inmates about 'how to fool the doctors' in order to appear impaired and incompetent."

9.  The defendant's mental health history does not impair his ability to understand the wrongfulness of his behavior or to exercise the power of reason.  Rather, it suggests that the defendant has attempted to excuse any wrongdoing on his part by exaggerating and manipulating his performances on tests administered by mental health professionals.  Based upon the documented evidence of the defendant's malingering and manipulation, a downward departure for diminished capacity is not warranted.

<u>Argument</u>

Pursuant to U.S.S.G § 5K2.13, "a downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense."  "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrong." U.S.S.G § 5K2.13.  While the defendant may have mental health issues, the evidence establishes that the defendant does not suffer from a "significantly reduced mental capacity," as defined under the sentencing guidelines, to warrant a downward departure.

The defendant claims that he suffers from a "significantly reduced mental capacity" because of a 1992 beating that resulted in "permanent brain damage" which in turn caused his criminal behavior.  This argument fails for two reasons: (1) upon information and belief, the medical records do not find that the defendant suffered permanent brain damage as a result of the assault; and (2) the defendant's criminal history pre-dates the assault.

Furthermore, a reduced sentence is warranted only "to reflect the extent to which reduced mental capacity contributed to the commission of the offense," provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.  U.S.S.G § 5K2.13

The First Circuit has adopted a minimalist approach to downward departures under § 5K2.13.  "...[B]ecause departures are meant to be the exception, not the rule, there must be something special about a given offender, or the accouterments of the crime committed, which distinguishes the case from the mine-run for that offense."  United States v. Aguilar-Pena, 887 F.2d 347, 350 (1st Cir. 1989) (quoting United States v. Villafane, 874 F.2d 43, 52 (1st Cir. 1988)).

In the present case the defendant claims that the 1992 assault changed his personality and that he is entitled to a downward departure reflecting a reduced culpability.  It is insufficient to show the mere existence of a mental defect.  It must be linked to the commission of the offense.  The burden of proving the existence of the diminished mental capacity as well as its contributory effect on the crime rests squarely on the defendant.  "The burden of proving causation is on the defendant, and there can be no appeal from the district court's denial of a reduction."  United States v. Regan, 989 F.2d 44, 45 (1st Cir.

6

1993).  "The decision to grant an upward or downward departure is at the discretion of the court.  As pertains to § 5K2.13 it is a matter of determining whether the criminal acts were committed while having a significantly reduced mental capacity.  This is an exercise in differential factfinding--no more--no less."  United States v. Field, 109 F.3d 83, 87 (1st Cir. 1997).

The defendant suggests that as a result of a "significantly reduced mental capacity" he was manipulated by others into committing the instant offenses.  The evidence suggests otherwise.  Moreover, the evidence proves that it is the defendant who manipulated others to assist him in committing the crimes.  As noted by Dr. Shawn Channell, the most recent forensic psychologist to evaluate the defendant, the voluminous discovery includes the statements of numerous individuals who describe the defendant engaging in "sophisticated criminal behavior" interaction with others, making deals with others, and "engaging in goal-directed behavior in general."  Specifically, the evidence would prove that the defendant, as a convicted felon, solicited a juvenile and other young adults to assist him in breaking into a storage unit and stealing numerous items, including the firearms and ammunition listed in the indictment, uttering stolen checks, and hiding a stolen gun which he ultimately sold to an unsuspecting victim.  The facts of this

case clearly demonstrate that it is the defendant who manipulated others.

The defendant not only has a history of manipulative behavior, as noted in his numerous mental health evaluations, but he continues to engage in manipulative behavior by: (1) refusing to take his medication; (2) contacting witnesses despite a restraining order; and (3) sending correspondence to civilians addressed as legal mail in order to avoid the screening process.[1]

The nexus between the mental defect and its causative effect and presence at the time of the offense must be shown in order to provide a basis for departure.  "Section 5K2.13 does not make diminished mental capacity an independent ground for departure." United States v. Lauzon, 938 F.2d 326, 333 (1st Cir. 1991). "...[T]he reduced mental capacity of a defendant must have contributed to some extent to the commission of the offense." Id. at 331, United States v. Frazier, 979 F.2d 1227, 1230 (7th Cir. 1992), United States v. Russell, 917 F.2d 512, 517 (11th Cir. 1990).

The record in this case does not support grounds for a diminished capacity departure.  The type of the illegal activity

---

[1] Dr. Campbell testified at the competency hearing that the defendant was aware that an inmate's mail was not screened if it was addressed to attorneys. The Government has been notified that the defendant consistently addresses correspondence to civilians as legal correspondence in order to avoid screening.

and the logic and planning required to carry it out as described by the witnesses do not suggest these were the actions of a significantly impaired or impulsive mind as contemplated by the guideline.  U.S.S.G. § 5K2.13.  The Government believes the defendant in this case cannot attribute his actions to a significant mental defect; rather they are more easily attributable to a reasoned and fully culpable criminal mind.

Lastly, a downward departure should not be granted because the defendant's lengthy criminal record indicates a need to incarcerate the defendant in order to protect the public. U.S.S.G. § 5K2.13.

WHEREFORE, the Government respectfully requests that this Honorable Court:

A.   Deny defendant's Motion for a Downward departure; and

B.   Grant any and all other relief it deems just.

Respectfully submitted,

THOMAS P. COLANTUONO
United States Attorney

January 26, 2007          By:   /s/ Debra M. Walsh
                                Debra M. Walsh
                                Assistant U.S. Attorney
                                N.H. Bar Assoc. #7944
                                53 Pleasant Street
                                Concord, New Hampshire 03301
                                Debra.Walsh@usdoj.gov

CERTIFICATION

I hereby certify that a copy of the foregoing motion has been served, via electronic case filing, to Sandra Bloomenthal, Esquire, counsel for the defendant, on January 26, 2007.


/s/Debra M. Walsh
Debra M. Walsh